**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **JOHN ROBERT SPENCER, ID # 1506830,** ) | |
| Petitioner, ) | |
| vs. ) | No. 3:11-CV-1685-P (BH) |
| ) | |
| **RICK THALER, Director,** ) | Referred to U.S. Magistrate Judge |
| **Texas Department of Criminal** ) | |
| **Justice, Correctional Institutions Division,** ) | |
| Respondent. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order* 3-251, this case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the habeas corpus petition should be **DENIED** with prejudice.

**I.  BACKGROUND**

On July 15, 2011, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for burglary in cause number 31754CR in Ellis County, Texas. Respondent is Rick Thaler, Director of TDCJ-CID.

**A.  Factual and Procedural History**

On April 5, 2007, the State indicted petitioner for capital murder by committing murder while in the course of committing a burglary. (Clerk's Record ("C.R."):3). He pleaded not guilty and was tried before a jury on May 23-30, 2008. (C.R.:1-2).

The evidence at trial established that in the early morning hours of February 3, 2007, Wendy Lane called 911 in Midlothian, Texas, and reported that petitioner had kicked in the door of her friend's home and was assaulting him with a bat. (R. 8:90). When the police arrived, petitioner was inside of the home and refused to come out, stating that he could not get into any more trouble than he was already in. (R. 8:102-03, 163-64). In order to gain entrance to the house, a police officer

shot petitioner with a bean bag gun. (R. 8:134, 171-74). When the police entered the house, they found the bloodied victim dead in the hallway and a baseball bat lying nearby. (R. 8:136-38, 148, 176). The autopsy revealed that the victim had died from blunt trauma to the head; he had multiple head injuries, including a broken nose and several broken and missing teeth. (R. 9:128-144). Blood stains found on the bedroom wall, the baseball bat, and petitioner's jeans were consistent with the victim's DNA. (R. 9:160-67).

     Lane testified that she had previously dated petitioner for four years, and he lived with her in Waxahachie. Because they had begun having problems in the relationship several months earlier, she was staying with the victim, who was a friend from work. (R. 9:8-15). On February 2, 2007, Lane received several telephone calls from petitioner, and at some point she stopped answering the phone. She and the victim went to bed around 11:00 p.m., with the door locked, the alarm on, and a baseball bat by the side of the bed. (R. 9:16-24). Several hours later, petitioner entered the bedroom, yelling at Lane. The victim hit petitioner with the bat two times and tried to tackle him. (R. 9:26-27). After they both landed against the wall and a dresser, Lane ran and called 911 on her cell phone, but did not complete the call. While running to the neighbor's house to use his telephone, she noticed that the front door had been kicked in. (R. 9:30-35).

     Petitioner testified that he and Lane had been having problems in their relationship, she had been staying with the victim, and she had told him that she was not dating the victim. He had been out with a friend and decided to go to the victim's house because Lane had not been answering his calls. (R. 9:286-91). He acknowledged that he did not ring the doorbell or knock on the door because he wanted to find out if Lane was sleeping with the victim. He denied that he was angry or had any intent to hurt or kill anyone, and he admitted that Lane had told him in January of 2007

that she and petitioner were not a couple anymore. (R. 9:291-92, 301). He admitted calling the victim's house numerous times the evening before and also that he did not leave the house when the burglar alarm went off. (R.9:301-04). He acknowledged that he and the victim both tried to grab the baseball bat and that he hit the victim during that time. (R. 9:294). Petitioner testified that he did not recall what happened after that and did not recall beating the victim to death. (R. 9:294-98, 307).

On May 30, 2008, the jury convicted petitioner of the lesser included offense of burglary, and after the penalty phase, sentenced him to life imprisonment. (C.R. 1-2). Petitioner's conviction was affirmed on direct appeal. *Spencer v. State*, No. 10-08-00217-CR (Tex. App.–Waco, July 29, 2009). His petition for discretionary review was denied on February 10, 2010. *See* PD-1215-09.

Petitioner filed a state habeas application raising most of the same claims as in his federal petition, as well as some additional claims, on April 26, 2011. (State Habeas Transcript "S.H.Tr.":117). On May 5, 2011, the state habeas court issued findings recommending that relief be denied. (*Id*. at 146-48). On June 29, 2011, the Texas Court of Criminal Appeals denied his state application on the merits without a written order based on the trial court's findings. (*Id*. at cover).

**B.     Substantive Claims**

On July 15, 2011, petitioner filed his federal habeas petition ("Pet.") raising the following grounds for relief:

(1) his trial attorney rendered ineffective assistance of counsel by:

-failing to provide the trial court with documents in support of a motion seeking a defense expert and failing to reassert the motion before the punishment phase of the trial;

-failing to object to testimony from the State's crime scene expert, who did not visit the crime scene; and

3

    -failing to raise a "sudden passion" defense (ground one);

(2) he was denied a fair trial by an impartial jury because a member of the jury researched the case and spoke to two other members, but only two of the three were removed from the panel (ground two);

(3) the trial court erred by:

    -not granting the motion for an expert witness;

    -permitting a juror who learned about the case from another juror to remain on the panel; and

    -appointing the same attorney who represented him at trial to represent him on direct appeal (ground three); and

(4) the prosecution committed misconduct by:

    -adding a deadly weapon charge to the indictment while the jury was deliberating; and

    -subjecting him to an incomplete conviction (ground four).

(Pet. at 6-7). Respondent filed a response on April 13, 2012, and provided the state court records. Petitioner did not file a reply brief.

## II. AEDPA STANDARD

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term

4

of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writs constitute an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). The AEDPA standards enumerated in 28 U.S.C. § 2254(d) therefore apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless

they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims that his trial counsel was ineffective by failing to: (1) provide the trial court with documents in support of a motion seeking a defense expert and failing to reassert the motion before the punishment phase of the trial; (2) object to testimony from the State's crime scene expert, who did not visit the crime scene; and (3) raise a "sudden passion" defense. (Pet. at 7-9).

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*,

6

466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

A. **Motion for Expert**

Petitioner first alleges that his trial counsel was ineffective because she did not supply the trial court with proper document to support her motion for an expert witness and because she did not reassert her motion prior to the punishment phase of the trial. (Pet. at 6).[1]

Prior to trial, defense counsel filed an *ex parte* motion to have a mitigation expert appointed to examine petitioner's history and background and to testify on his behalf at the punishment phase of the trial. (C.R.:23-25). The trial court denied the motion because the State was not seeking the death penalty and because there was no showing that the State would present an expert witness at punishment. Therefore, the court concluded that the testimony sought would be irrelevant and

---

[1] Respondent asserts that petitioner both failed to exhaust and is procedurally barred from raising his claim that counsel was ineffective for failing to re-urge the motion for an expert. "[N]otwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State", courts may deny a habeas petition on the merits. 28 U.S.C. § 2254(b)(2); *see also Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (reaffirming pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion in each case [under § 2254(b)(2)] to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith'"). A court may also deny a claim on its merits in lieu of applying a procedural bar. *See Braswell v. Dretke*, 2005 WL 1058865 (N.D. Tex. May 2, 2005). In this case, the administration of justice would be better served by bypassing the procedural issues and reaching the merits of the claim.

7

inadmissible. (C.R.:27).

An indigent defendant is entitled to court-appointed experts in certain circumstances, such as where he has made a preliminary showing that the expert's subject matter will be an issue at trial. *See Ake v. Oklahoma*, 470 U.S. 68, 83 (1985).  Mitigation evidence regarding a defendant's character and history is relevant to the individualized sentencing determination of whether the death penalty should be imposed. *Riley v. Cockrell*, 339 F.3d 308, 316 (5th Cir. 2003). In petitioner's case, the State did not seek the death penalty.  Therefore, the trial court determined that such evidence was irrelevant and inadmissible.  The appellate court ruled that the trial court had not erred in denying the motion because counsel had failed to make a proper showing of the need for an expert under *Ake*. *See Spencer*, slip op. at *1.  Petitioner has not pointed to any documents that might have supported the motion, he has failed to otherwise show that such testimony would have been relevant in a non-death penalty trial, and he has failed to allege or show a reasonable probability that the motion would have been granted if counsel had re-urged it prior to punishment.  Counsel was therefore not ineffective in this regard.

**B.     Failure to Object**

Petitioner next asserts that trial counsel was ineffective for failing to object to testimony from a crime scene expert about the blood spatter evidence at the crime scene.  Petitioner does not appear to allege that he was not qualified, only that counsel should have objected because he did not visit the crime scene and instead relied on autopsy photographs, crime scene diagrams, and photographs from the crime scene and of petitioner's clothing. (Pet. at 6; *see* R. 9:180).

Under Texas state law, expert testimony is admissible if the underlying theory is valid, the technique applying the theory is valid, and the technique is properly applied. *Kelly v. State*, 824

8

S.W.2d 568, 573 (Tex. Crim. App. 1972). Petitioner has neither alleged nor shown that blood spatter analysis is not a valid scientific theory or that it was not properly applied in his case. Furthermore, Texas state courts have recognized that an expert witness need not have personal knowledge of all facts upon which his opinion is based, but may instead rely on facts or data made known to him from others. *See Henderson v. State*, 14 S.W.3d 409, 412 (Tex. App.–Austin 2000). Indeed, the Texas Rules of Evidence contemplate that an expert will base his opinion on facts or data made known to him. *See* TEX. R. EVID. 703. Petitioner has not shown a reasonable probability that an objection to this testimony would have been sustained. Therefore, counsel was not ineffective for failing to make this objection. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (holding that the failure to make meritless objections or motions does not constitute deficient performance).

C.  **Sudden Passion Defense**

Petitioner next asserts that his trial counsel was ineffective for failing to raise a sudden passion defense at the punishment phase of his trial. Under Texas law, if a criminal defendant is convicted of murder, he may raise sudden passion as an issue at punishment. If it is proven by a preponderance of the evidence that he caused the death while under the immediate influence of sudden passion, the murder conviction will be lowered from a first-degree felony to a second-degree felony. *See* TEX. PENAL CODE. ANN. § 19.02(d) (West 1993). However, petitioner was convicted of burglary, not murder, and Texas law does not provide for a sudden passion defense if convicted of burglary. *See* § 30.02. Therefore, counsel was not ineffective for failing to pursue a meritless strategy. *Clark v. Collins*, 19 F.3d at 966. The state habeas court's conclusion that trial counsel was not ineffective is not an unreasonable application of federal law, and petitioner's first ground should be denied.

## IV.  JURY MISCONDUCT

In his second ground for relief, petitioner asserts that he was denied a fair trial by an impartial jury.  He alleges that the panel was not impartial because a member of the jury researched the case and spoke to two other members of the jury, but only two of the three were removed from the jury panel.

Prior to testimony beginning in the trial, the trial judge learned from a bailiff that an alternate juror had conducted some research about the crime and had allegedly communicated this to other jurors.  The court held a hearing on this matter.  During the hearing, the alternate juror testified that he read about the case on the internet and drove past the house.  He spoke about this within earshot of three people while waiting in the hallway.  It was determined in the hearing that one of these people was a female juror, one was a male juror, and the third was an employee of the district attorney's office.  The trial court excused both the alternate juror who did independent research and the female juror because she had heard much of what he had said.  The trial court permitted the other juror to allowed to remain on the panel because he testified that he only overheard part of the conversation, that he heard no specifics, that he only heard that one could learn about the case on the internet, and that this would have no influence on his verdict.  None of the other jurors heard any of this information. (R. 8:10-45).

The Sixth and Fourteenth Amendments guarantee a defendant a right to an impartial jury.  *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  In *Irvin v. Dowd*, the Supreme Court defined an impartial juror not as one who has no preconceived notions, but instead, one who can lay aside his impression or opinion and render a verdict based on the evidence presented in court.  *Irvin*, 366 U.S. at 723.  The Supreme Court has also stated that the

appropriate remedy for allegations of juror partiality is a hearing in which the criminal defendant has an opportunity to prove *actual bias* on the part of the juror. *Smith v. Phillips*, 455 U.S. 209, 215 (1982)(emphasis added). The Supreme Court also reiterated that in the context of federal habeas review, factual findings made by the state court regarding allegations of juror partiality are entitled to a presumption of correctness. *Id.* at 218.

The state habeas court concluded that petitioner received a fair trial. This conclusion is not contrary to federal law. Petitioner has failed to establish that any person who sat on his juror had any actual bias and therefore was impartial. The record reflects that most of the jurors had heard no comments by the alternate juror and the one who did heard no specifics and testified under oath that what he did hear would have no influence on his verdict. Petitioner has neither alleged nor shown that he had any preconceived notions, much less that he was incapable of laying aside impressions or opinions. This ground is therefore without merit.

### V.  TRIAL ERROR

Petitioner alleges that the trial court erred by: (1) not granting the defense motion for an expert witness; (2) permitting a juror to remain on the panel although he learned about the case from another juror; and (3) appointing the same attorney who represented him at trial to represent him on direct appeal. Tt has already been determined that there was no constitutional error in denying the defense motion or in permitting the juror to remain on the panel. Therefore, there was no trial error.

With regard to petitioner's claim that the trial court erred in appointing his trial attorney to represent him on direct appeal, Texas law provides that a defense attorney who is appointed to represent an indigent defendant does so until all appeals are exhausted or he is relieved of duties. *See* TEX. CODE. CRIM. PROC. ANN. art. 26.04(j)(2) (West 2008). Therefore, appointment of the same

defense counsel for both trial and appeal was appropriate under state law. Federal habeas proceedings do not afford review of a state court's interpretation of its own law. *Charles v. Thaler*, 629 F.3d 494, 500 (5th Cir. 2011); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). Instead, a petitioner is entitled to federal habeas relief due to trial error only if such error is not harmless within the meaning of *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), because "the error 'had substantial and injurious effect or influence in determining the . . . verdict.'" (citation omitted).

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)). To be entitled to federal habeas relief due to a trial error, petitioner must show that the error actually prejudiced him. *Brecht*, 507 U.S. at 637.

Petitioner has not alleged either that defense counsel provided ineffective assistance on appeal or that he was prevented from raising any particular grounds on appeal. Furthermore, this Court has addressed his claims of ineffective assistance of counsel at trial on their merits. Therefore, petitioner has failed to establish either trial error or any prejudice to him. This ground was denied on its merits at the state habeas level, and this is not contrary to federal law. Petitioner is not entitled to relief on his claims of trial error.

## VII.  PROSECUTION MISCONDUCT

In his fourth ground for relief, petitioner contends that the prosecution committed misconduct by: 1) adding a deadly weapon charge while the jury was deliberating his guilt or innocence; 2) convicting him of an incomplete offense.

12

"Prosecutorial misconduct implicates due process concerns." *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). Actions by a prosecutor may violate due process in two ways: "They may abridge a specific right conferred by the Bill of Rights, or may constitute a denial of due process generally, thus constituting a 'generic substantive due process' violation." *Id.* (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988)). Federal courts apply "a two-step analysis to charges of prosecutorial misconduct." *United States v. Duffaut*, 314 F.3d 203, 210 (5th Cir. 2002). The courts first decide whether the prosecutor's actions were improper and then determine whether the actions "prejudiced the defendant's substantive rights." *Id.*

When a petitioner asserts a generic due process violation, and it is determined that the prosecutor's actions were improper, the Court asks whether the prosecutorial actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate standard of review for such allegations is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (quoting *Donnelly* 416 U.S. at 642). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted).

**A.     Deadly Weapon Charge**

Petitioner first asserts that the prosecutor committed misconduct by adding a deadly weapon charge during jury deliberations at the guilt phase of the trial. (Pet. at 7). The state habeas court

denied this claim on its merits, and this denial is not contrary to federal law.

The record reflects that the punishment jury charge required the jury to answer whether or not it believed beyond a reasonable doubt that petitioner used a deadly weapon in the commission of the offense. The jurors were also instructed that if their answer to that question was "yes", petitioner would not be eligible for parole until he had served the lesser of half of his sentence or thirty years. (S.H.Tr.:74-75). The jury answered in the affirmative and sentenced petitioner to life imprisonment. (S.H.Tr.:74, 79). Prior to jury arguments at the punishment phase, defense counsel objected to the punishment jury charge because she was not provided notice that the prosecution intended to seek a deadly weapon affirmative finding until the jury was deliberating during the guilt phase of the trial, rather than the deadly weapon allegation in the indictment. (R. 11:39). The prosecutor responded that petitioner had originally been indicted for capital murder, where there is no necessity for a deadly weapon allegation to be included in the indictment. The prosecutor further explained that the indictment did provided notice that the State was alleging that petitioner killed the victim with a baseball bat and that the defense was provided notice that the State would seek a deadly weapon affirmative finding when it became a possibility that petitioner would be convicted of burglary, where a deadly weapon affirmative findings is applicable. (R. 11:40-41). The trial court overruled defense counsel's objection on the basis that the defense was provided adequate notice through the indictment that a deadly weapon finding could be sought and that Texas state law did not require greater notice. (R. 11:41).

Under Texas state law, an allegation in an indictment that a death is caused by a particular instrument is sufficient notice that the State may seek a deadly weapon finding. *Blount v. State*, 257 S.W.2d 712, 714 (Tex. Crim. App. 2008), *citing Ex parte Beck*, 769 S.W.2d 525, 526-27 (Tex. Crim.

14

App. 1989). The indictment alleged that petitioner intentionally caused the victim's death by beating him with a bat during the course of committing or attempting to commit a burglary. (C.R.:3). Therefore, under Texas state law, petitioner was provided sufficient notice by the indictment that his use of a deadly weapon would be an issue at trial. "The sufficiency of a state indictment is not a matter for federal habeas corpus review unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Alexander v. McCotter*, 775 F.2d 595, 598 (1985). Moreover, in a habeas proceeding, this Court does not sit in review of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). The prosecutor complied with Texas state law. Petitioner has failed to establish that his actions were improper, much less that they violated petitioner's due process rights. This claim is without merit.

**B.     Incomplete Offense**

Finally, petitioner alleges that the prosecutor committed misconduct because he was convicted of an "incomplete offense" when he was convicted of the lesser-included offense of burglary after being indicted for capital murder. (Pet. at 7). The basis for petitioner's allegation that his burglary conviction is "incomplete" is unclear because it was a lesser-included offense of capital murder under state law. Such a conclusory claim does not entitle petitioner to relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990). The state court's denial of relief is not contrary to federal law. Petitioner's claims of prosecutorial misconduct are without merit and should be denied.

## VIII.  EVIDENTIARY HEARING

Based on the relevant filings and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

15

## IX.  RECOMMENDATION

The request for habeas corpus relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED on this 9th day of July, 2012.**

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　IRMA CARRILLO RAMIREZ
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE


**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　IRMA CARRILLO RAMIREZ
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE